UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**JENNIFER D.,**

                      **Plaintiff,**

v.                                                                                    3:19-CV-437 (NAM)

**ANDREW M. SAUL,**
**Commissioner of Social Security,**[1]

                      **Defendant.**
_____

**Appearances:**

Justin Goldstein, Esq.
Law Offices of Kenneth Hiller
6000 N. Bailey Ave., Suite 1A
Amherst, NY 14226
*Attorney for the Plaintiff*

Heather Sertial,
Special Assistant U.S. Attorney
Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278-0004
*Attorney for the Defendant*

**Hon. Norman A. Mordue, Senior United States District Court Judge**

**MEMORANDUM-DECISION AND ORDER**

**I.  INTRODUCTION**

      Plaintiff Jennifer D. filed this action on April 9, 2019 under 42 U.S.C. § 405(g), challenging the denial of her application for social security disability ("SSD") benefits and supplemental security income ("SSI") under the Social Security Act ("the Act"). (Dkt. No. 1).

---

[1] Plaintiff commenced this action against the "Commissioner of Social Security." (Dkt. No. 1). Andrew M. Saul became the Commissioner on June 17, 2019 and will be substituted as the named defendant in this action. Fed. R. Civ. P. 25(d). The Clerk of Court is respectfully directed to amend the caption.

The parties' briefs are now before the Court. (Dkt. Nos. 14, 16). After carefully reviewing the administrative record, ("R," Dkt. No. 9), the Court reverses the decision of the Commissioner and remands for further proceedings.

## II. BACKGROUND

### A. Procedural History

Plaintiff applied for SSD and SSI benefits on June 23, 2015, alleging that she became disabled on February 1, 2014. (R. 158–70). A hearing on her claim was held on March 26, 2018 before Administrative Law Judge ("ALJ") Jeremy G. Eldred. (R. 28–47). On March 28, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. (R. 12–25). Plaintiff's subsequent request for review by the Appeals Council was denied. (R. 1–6). Plaintiff then commenced this action. (Dkt. No. 1).

### B. Plaintiff's Background and Testimony

Plaintiff alleged that she became unable to work due to conditions including: (1) diabetes mellitus ("DM"); (2) diabetic neuropathy; (3) peripheral artery disease ("PAD"); (4) coronary artery disease ("CAD"), (5) hypertension ("HTN"), and hyperlipidemia ("HLP"); (6) atrial fibrillation ("Afib"); (7) congestive heart failure ("CHF"); and (8) recurring hernia. (R. 190).

Plaintiff testified that she was born in 1956 and last worked in 2009 as a receptionist for an insurance company. (R. 32, 34). Plaintiff testified that she has been in an out of the hospital due to diabetes, and that diabetes causes her to have a dry mouth, dizziness, and numbness in her hands, legs, and feet. (R. 34–36). She further stated that she developed heart problems which caused chest pain and an erratic heartbeat. (R. 36–37). Plaintiff testified that on a typical day she stays home reading, cleaning, and taking care of her niece's young son. (R. 38–39). Plaintiff testified that she had difficulty sitting for prolonged periods due to her neuropathy,

which causes shooting pain in her legs and feet.  (R. 39).  She stated that her conditions also made it difficult to walk, stand, and lift objects.  (R. 40).  She further stated that she tires easily and needs frequent breaks when doing household activities.  (R. 44).

### C. Medical Evidence

Plaintiff received treatment for her conditions from various providers over the years, and the Court will briefly summarize the relevant records.

#### 1) Treatment Records

On November 14, 2014, Plaintiff treated with Dr. Asad Khan for right lower extremity numbness.  (R. 312–13).  Plaintiff reported numbness in both lower extremities and pain in the calf bilaterally when walking.  (R. 312).  Plaintiff was assessed with severe peripheral vascular disease, causing her pain at rest.  (R. 313).  She was scheduled for a right leg angiogram.  (R. 313).  On November 19, 2014, Plaintiff treated in the hospital for DM, HTN, CAD, hypercholesterolemia, and obesity.  (R. 275–84, 310–11).  She underwent an arteriogram.  (R. 278).  Her postoperative diagnoses were bilateral lower extremity right greater than left with "life-limiting claudication" (pain caused by reduced blood flow).  (R. 281).  On examination, it was noted that Plaintiff had: absent sensation in the right foot; ulcers to the right 2nd and 3rd toes; and pulses were absent.  (R. 280).

On November 24, 2014, an ultrasound showed a necrotic area on Plaintiff's right third toe, and she was referred to a podiatrist.  (R. 307–09).  On December 16 and 23, 2014, podiatrist Dr. Pamela Sparks treated Plaintiff for right third toe ulcer and cellulitis.  (R. 334–36).  Plaintiff reported numbness and swelling of the feet, and 9 out of 10 pain in the right foot, which limited her walking.  (R. 335).  Dr. Sparks found that: capillary filling was delayed to the toes on the right foot; protective sensation was absent in the right foot; both feet were numb; and range of

motion was limited.  (R. 336).  Among other things, Plaintiff was assessed with severe peripheral neuropathy and peripheral artery disease.  (R. 336).

On January 9, 2015, Dr. Sparks treated Plaintiff for right third toe ulcer and cellulitis; her MRI was delayed due to stenting in the right leg.  (R. 333).  On January 20, 2015, Dr. Sparks treated Plaintiff again and reviewed the MRI, which showed edema of the right third toe with hyperpigmentation, 4 mm ulceration surrounded with hyperkeratosis, and osteomyelitis of the right third toe.  (R. 332).  On February 24, 2015, Plaintiff underwent amputation of the third right toe.  (R. 329–30).

On April 13, 2015, Plaintiff sought treatment for abdominal pain.  (R. 264–65, 439–46).  She reported a history of gastric bypass and incarcerated hernia.  (R. 264).  On examination, there was a periumbilical mass/lump and tenderness to palpation.  (R. 265).  A CT scan of the abdomen showed a small hiatal hernia.  (R. 272–73).  On May 6, 2015, Plaintiff was treated for a ventral hernia.  (R. 447–51).  On examination, there was 5 cm of periumbilical bulging with intra-umbilical bulging.  (R. 449).

On September 29, 2015, Dr. Sparks treated Plaintiff again, finding that: capillary filling was delayed in the toes of the right foot; protective sensation was absent to the bilateral feet; both feet were completely numb; and range of motion was decreased in all digits, metatarsophalangeal joints, and ankles bilaterally.  (R. 320–21).

From October 14 to 16, 2015, Plaintiff was hospitalized for treatment of acute coronary syndrome following emergency room treatment for respiratory distress.  (R. 636–64).  She had active problems of acquired hyperlipidemia, DM, obesity, hypertension, coronary artery disease, acute respiratory distress, status post gastric bypass, PAD, elevated troponin, acute diastolic heart failure, hypertensive heart disease with heart failure, flash pulmonary edema, and anemia.

(R. 636–67). She underwent cardiac catheterization with stenting on October 15, 2015. (R. 641–42). She was assessed with severe two-vessel distal disease. (R. 641).

On October 19, 2015, Plaintiff treated with Dr. James Tucker for acute coronary syndrome, flash pulmonary edema, hypertensive heart disease with heart failure, and acute diastolic heart failure. (R. 452–56). On January 29, 2016, she received additional treatment for coronary artery disease and acute bronchitis. (R. 457–60).

On May 9, 2016, Dr. Tucker treated Plaintiff for shortness of breath, HTN, and cough. (R. 482–88). She had dyspnea on exertion. (R. 482). She had gradually worsening and uncontrolled hypertension. (R. 482). On August 15, 2016, Plaintiff was treated for cough, hypertensive heart disease with heart failure, and hypertension. (R. 489–94). On August 22, 2016, Plaintiff treated for umbilical hernia and hypertension. (R. 387–91, 495–504). She had an abnormal diabetic foot sensory examination with no feeling in either foot. (R. 387).

From August 26 to 31, 2016, Plaintiff was treated in the hospital for a hernia. (R. 394–406, 412–15, 665–85). She presented to the emergency room with vomiting and constant, worsening diffuse abdominal pain. (R. 399). She required urgent surgery for small bowel obstruction and incisional hernia. (R. 404, 412–15).

On August 29, 2016, Plaintiff had x-rays of the chest, which revealed probable atelectasis or scarring at the right lung base with mild tenting of the right hemidiaphragm. (R. 392). A CT scan from August 26, 2016 revealed three well-circumscribed pulmonary nodules, thyromegaly, cardiomegaly, coronary artery calcifications, enlarged pulmonary artery, and 2.2 cm brachiocephalic artery aneurysm. (R. 498–99).

On September 8, 2016, Dr. Tucker treated Plaintiff for hypertension and small bowel obstruction. (R. 509–14). Her blood pressure was 150/80, and her weight was 186 pounds. (R.

510). On October 17, 2016, Dr. Mark Charlamb treated Plaintiff for diastolic dysfunction, hypertensive heart disease, two-vessel CAD, diabetes, hyperlipidemia, status post gastric bypass surgery, status post recent hernia revision, PAD, and bilateral carotid artery bruits. (R. 419–22).

On December 6, 2016, Dr. Beth Wiedeman treated Plaintiff for shortness of breath, cough, hypertensive heart disease with heart failure, type 2 DM with diabetic neuropathy, essential hypertension, anemia, acute asthma exacerbation, pneumonia, and right lateral epicondylitis. (R. 514–27). She was extremely wheezy with increased shortness of breath, mostly with activity. (R. 515). X-rays showed bilateral pneumonia. (R. 515, 522–23). She had increased anemia, decreased oxygen saturation, moderate diffuse wheezes in both lungs, and she was prescribed a nebulizer. (R. 516–17).

On December 8, 2016, Dr. Tucker treated Plaintiff for shortness of breath, anemia, right elbow pain, acute diastolic heart failure, hypertensive heart disease with heart failure, and coronary artery disease. (R. 528–36). On December 12, 2016, Plaintiff was treated for exacerbated chronic CHF, shortness of breath, CAD, and pneumonia. (R. 537–43). On December 29, 2016, Plaintiff treated for CHF and anemia. (R. 544–51). On January 27, 2017, Plaintiff treated for shortness of breath, anemia, CHF, and possible pneumonia. (R. 552–59). She was referred to cardiology for an ECG. (R. 556).

On February 3, 2017, Plaintiff underwent an echocardiograph which revealed impaired diastolic relaxation. (R. 340). On March 10, 2017, Dr. Tucker treated Plaintiff for peripheral edema, CHF, and anemia. (R. 560–69). She had fatigue, cough, shortness of breath, and headaches. (R. 561). On May 12, 2017, Plaintiff was treated for shortness of breath and new onset rapid Afib with element of high output failure. (R. 570–83). She had gradually worsening shortness of breath and leg swelling. (R. 570). She had weight gain of 40 pounds and

abdominal distention. (R. 571). Chest x-rays showed cardiomegaly. (R. 576). On May 15, 2017, Plaintiff was treated for Afib and edema. (R. 584–99). She had new onset rapid Afib. (R. 584). She had shortness of breath, tachycardia, fatigue, leg swelling, and light-headedness. (R. 584–85).

On May 18, 2017, Dr. Charlamb treated Plaintiff for new onset Afib and weight gain. (R. 342–45). She had difficulty walking with shortness of breath and fatigue. (R. 342). An echocardiogram and cardiac catheterization from October 4, 2015 revealed two-vessel CAD and large marginal multiple 90% stenosis. (R. 342). She was assessed with abnormal electrocardiogram, hypertensive heart disease with heart failure, essential hypertension, acute pulmonary edema, and new onset Afib. (R. 344).

On June 23, 2017, Dr. Tucker treated Plaintiff for persistent Afib, anemia, and DM. (R. 600–10). She had palpitations, weakness, and fatigue. (R. 601). On July 10, 2017, Plaintiff was treated for persistent Afib; she had light-headedness, headaches, and sleep disturbance. (R. 611–18). On August 3, 2017, Dr. Charlamb treated Plaintiff for ongoing palpitations. (R. 346–49). An ECG was abnormal. (R. 350). On August 8, 2017, Dr. Charlamb treated Plaintiff with cardioversion and she was assessed with recurrent Afib. (R. 351–54, 687–92). On August 18, 2017, another ECG was abnormal. (R. 355).

On September 28, 2017, Dr. Charlamb treated Plaintiff in the hospital for recurrent Afib. (R. 356–59). On October 20, 2017, Plaintiff underwent cardioversion due to Afib. (R. 698–99). On October 27, 2017, Dr. Charlamb treated Plaintiff for ongoing Afib with a controlled ventricular response. (R. 361–64, 595–98). ECG was abnormal, and she underwent a second cardioversion on October 20, 2017. (R. 367–78).

On January 10, 2018, Dr. David Arndt of Podiatry Services of CNY treated Plaintiff for her foot problems: she had weak pedal pulses bilaterally; capillary filling was delayed in the toes of the right foot; protective sensation was absent to both feet; vibratory sensation was absent bilaterally; and range of motion was decreased in all digits, metatarsophalangeal joints, and ankles bilaterally. (R. 315–16). She was assessed with severe peripheral neuropathy. (R. 315).

### 2) Consultative Examination, Dr. Ganesh

On August 17, 2015, non-treating State agency consultant Dr. Kalyani Ganesh completed an internal medicine examination of Plaintiff. (R. 286–89). Plaintiff reported the following history and symptoms: a recurring abdominal hernia; intermittent pain which required another surgery; increased pain with lifting or carrying; diabetic neuropathy; arterial insufficiency of the right third toe that required partial amputation; stent placement; and foot numbness at times. (R. 286). Plaintiff reported that she could cook and clean daily, do laundry once a week, shop twice, and shower and dress daily. (R. 287). On examination, Dr. Ganesh noted that Plaintiff: could not walk on heels or toe and could not squat; lumbar spine range of motion was limited; deep tendon reflexes were absent bilaterally in the upper and lower extremities; she had decreased pinprick sensation in the left lower extremity; and her pulses were feeble bilaterally. (R. 287–88). Dr. Ganesh stated that Plaintiff's prognosis was guarded. (R. 289). As to Plaintiff's limitations, Dr. Ganesh found: "No gross limitation sitting, standing, or walking. Should avoid heavy lifting, carrying, pushing, and pulling secondary to recurrent hernia." (R. 289).

### 3) Medical Assessment, Dr. Arndt

On March 14, 2018, Dr. Arndt completed a medical source statement for Plaintiff. (R. 701–03). Treatment was noted at Podiatry Services of CNY since December 16, 2014 and with

8

Dr. Arndt as of January 10, 2018. (R. 701). Specifically, treatment was noted for diabetes, severe neuropathy, and peripheral artery disease. (R. 701). Dr. Arndt found that, in a competitive work situation, Plaintiff could: walk 1.5 blocks without rest or severe pain; sit for 30 minutes and stand for 20 minutes before changing positions; sit for a total of about 2 hours and stand/walk for a total of about 2 hours in an 8-hour working day with normal breaks; she required a job that permitted shifting positions at will from sitting, standing or walking; she required a 10 minute unscheduled break every hour; she could never crouch/squat or climb ladders and occasionally stoop (bend) and climb stairs; and she would likely be absent about 4 days per month as a result of her impairments and/or treatment. (R. 701–03).

### D.  ALJ Decision Denying Benefits

On March 28, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. (R. 12–25). At step one of the five-step evaluation process, the ALJ determined that Plaintiff had not engaged in gainful employment since February 1, 2014, the alleged onset date of disability. (R. 17).

At step two, the ALJ determined that, under 20 C.F.R. §§ 404.1520(c), 416.920(c), Plaintiff had the following "severe" impairments: diabetes, diabetic neuropathy, status post amputation of the right third toe, coronary artery disease, atrial fibrillation, hypertension, hyperlipidemia, peripheral artery disease, a history of abdominal hernia, and a history of obesity (status post gastric bypass surgery). (R. 17). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R. 18).

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "the full range of sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a)." (R. 18). The ALJ stated that this RFC finding was supported by Plaintiff's "clinical findings, treatment history, and reported activities of daily living, as well as the consultative examiner's opinion." (R. 20).

Next, the ALJ found that Plaintiff had past relevant work as a receptionist, and she was still capable of performing this work because it "does not require the performance of work-related activities precluded by [her] residual functional capacity." (R. 20). The ALJ noted that the vocational expert testified that this occupation "is generally performed at the sedentary exertional level in the national economy." (R. 21). Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (R. 21).

### III.   DISCUSSION

#### A.  Disability Standard

To be considered disabled, a claimant must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the claimant's impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The SSA uses a five-step process to evaluate disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the

> [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [*per se*] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Selian v. Astrue*, 708 F.3d 409, 417–18 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)); *see also* 20 C.F.R. §§ 404.1520, 416.920. The Regulations define residual functional capacity ("RFC") as "the most you can still do despite your limitations," including limitations on physical and mental abilities. 20 C.F.R. §§ 404.1545, 416.945. In assessing the RFC of a claimant with multiple impairments, the Commissioner considers all "medically determinable impairments, including . . . medically determinable impairments that are not 'severe.'" *Id*. §§ 404.1545(a)(2), 416.945(a)(2). The claimant bears the initial burden of establishing disability at the first four steps; the Commissioner bears the burden at the last. *Selian*, 708 F.3d at 418.

### B. Standard of Review

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether Plaintiff is disabled. Rather, the Court must review the administrative record to determine whether "there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted).

11

When evaluating the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)). The Court may set aside the final decision of the Commissioner only if it is not supported by substantial evidence or if it is affected by legal error. 42 U.S.C. § 405(g); *Selian*, 708 F.3d at 417; *Talavera*, 697 F.3d at 151; *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447–48 (2d Cir. 2012) (quoting *Moran*, 569 F.3d at 112).

### C. Analysis

Plaintiff challenges the ALJ's decision on two grounds: 1) the RFC determination is not supported by substantial evidence; and 2) the ALJ improperly weighed the opinion of her treating physician Dr. Arndt. (Dkt. No. 14).

#### 1) Treating Physician Rule

Plaintiff argues that the ALJ failed to properly evaluate the opinion of Dr. Arndt, who assessed Plaintiff with significant limitations. (Dkt. No. 14, p. 22). According to Plaintiff, the ALJ erred by discounting Dr. Arndt's opinion without identifying any evidence inconsistent with the limitations he found. (*Id.*, pp. 22–23). The Commissioner contends that the ALJ gave good reasons for assigning little weight to Dr. Arndt's opinion. (Dkt. No. 16, p. 16).

Recently, in *Estrella v. Berryhill*, the Second Circuit reiterated its mandate that ALJs must follow specific procedures in determining the appropriate weight to assign a treating physician's opinion. *See generally* 925 F.3d 90, 95–98 (2d Cir. 2019). The Circuit described the applicable standard, writing that:

12

> First, the ALJ must decide whether the opinion is entitled to controlling weight. "[T]he opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess*, 537 F.3d at 128 (third brackets in original) (quoting 20 C.F.R. § 404.1527(c)(2)). Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it. In doing so, [the ALJ] must "explicitly consider" the following, nonexclusive "*Burgess* factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))). At both steps, the ALJ must "give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2)).

*Id.* at 95–96. The Circuit also noted that "[a]n ALJ's failure to 'explicitly' apply the Burgess factors when assigning weight at step two is a procedural error." *Id.* (citing *Selian*, 708 F.3d at 419–20). "If 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment],' we are unable to conclude that the error was harmless and consequently remand for the ALJ to 'comprehensively set forth [its] reasons.'" *Id.* (citing *Halloran*, 362 F.3d at 32–33).

In this case, the ALJ failed to clearly explain why Dr. Arndt's opinion was not entitled to controlling weight. Dr. Arndt assessed that Plaintiff had significant limitations based on diabetes, severe neuropathy, and peripheral arterial disease. (R. 701). Most notably, Dr. Arndt found that Plaintiff could only: sit for 30 minutes and stand for 20 minutes before changing positions; and sit for a total of about 2 hours in an 8-hour work day. (R. 701–02). This assessment would rule out sedentary work. The ALJ opted to give Dr. Arndt's opinion

13

"little weight" because it was "not consistent with the record as a whole, including positive response to treatment," her daily activities, and Dr. Ganesh's opinion. (R. 20). However, this scant analysis falls short. Although the ALJ mentioned the inconsistency of the opinion with the record, the decision does not elaborate on that point, or address the frequency, length, nature, and extent of Plaintiff's treatment with Dr. Arndt, the amount of medical evidence supporting the opinion, or whether Dr. Arndt was a specialist. *See* 20 C.F.R. § 404.1527(c)(2). Indeed, Dr. Arndt specializes in podiatry, and although he only saw Plaintiff twice in 2018, Plaintiff was a frequent patient at his practice starting in 2014. (*See* R. 323–36). Dr. Arndt's assessment of impairments related to severe diabetic neuropathy is also supported by previous findings to that effect, (*see, e.g.*, R. 281, 313, 320, 336), and Plaintiff's testimony (R. 39). Therefore, the ALJ erred in applying the treating physician rule as to Dr. Arndt's opinion. And the Court cannot conclude the error was harmless because the ALJ's conclusory analysis does not otherwise provide good reasons for the weight given to Dr. Arndt's opinion.

The question then is, based on the foregoing, whether to remand this case for additional administrative proceedings or for the calculation of benefits. When the record contains persuasive evidence of total disability and the correct application of the legal standards leads to the conclusion that the plaintiff is disabled and further proceedings would serve no purpose, remand for calculation of benefits is appropriate. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("Where application of the correct legal standard could lead to only one conclusion, we need not remand."). If there are important gaps in record, however, further proceedings are necessary. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

The Court finds that remand for calculation of benefits is warranted in this case. The administrative record is complete, and additional development of the evidence is not required.

Further, for the reasons discussed above, once proper weight is given to the restrictive opinion of Plaintiff's treating physician Dr. Arndt, a finding of disability is inevitable. This opinion should have been given controlling weight based on the factors in 20 C.F.R. § 416.927(c)(2), particularly Dr. Arndt's treating relationship with Plaintiff, his expertise in podiatry, and the consistency of his opinion with previous findings and Plaintiff's testimony that she had difficulty sitting for prolonged periods due to her severe diabetic neuropathy, which caused swelling and pain in her legs and feet. Further, the vague opinion of Dr. Ganesh, who only saw Plaintiff once for a consultative examination, does not provide substantial evidence to override Dr. Arndt's opinion.

Accordingly, the Court remands this case solely for calculation of benefits. *See Cordero v. Colvin*, 15-CV-00845, 2016 WL 6829646, at *5, 2016 U.S. Dist. LEXIS 161126, at *17–18 (W.D.N.Y. Nov. 21, 2016) (remanding for calculation of benefits where "the record is complete, and further administrative proceedings would serve no purpose"); *Yates v. Colvin*, 959 F. Supp. 2d 233, 242 (N.D.N.Y. 2013) (remanding for calculation of benefits where treating physicians assessed limitations that precluded work and their opinions should have been given controlling weight); *Boylan v. Astrue*, 32 F. Supp. 3d 238, 252 (N.D.N.Y. 2012) (remanding for calculation of benefits where the ALJ erred in applying treating physician rule and the record contained persuasive evidence of disability).

### IV.  CONCLUSION

For the foregoing reasons it is

**ORDERED** that the decision of the Commissioner is **REVERSED,** and this matter is **REMANDED FOR THE CALCULATION OF BENEFITS**; and it is further

**ORDERED** that the Clerk of the Court provide a copy of this Memorandum-Decision and Order to the parties in accord with the Local Rules of the Northern District of New York; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Date:   May 20, 2020
        Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge